UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH and LAURIE BYRGE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 18 C 3267 |
| | ) | |
| R. ELLIOTT HALSEY and HALSEY LAW, P.C., | ) | Judge Charles P. Kocoras |
| | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendants R. Elliott Halsey ("Halsey") and Halsey Law, P.C.'s ("Halsey Law") (collectively, "the Defendants") motion to dismiss Plaintiffs Kenneth and Laurie Byrge's (collectively, "the Plaintiffs") First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court denies the Defendants' motion.

## STATEMENT

For purposes of this motion, the Court accepts as true the following facts from the amended complaint. *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). All reasonable inferences are drawn in the Plaintiffs' favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

The Plaintiffs are Illinois residents. Defendant Halsey is an attorney employed at Halsey Law, a professional corporation in Illinois that engages in the practice of debt collection.

In 2007, the Plaintiffs entered into a loan with the Leonard Ostrom Irrevocable Trust ("the Trust"), borrowing $750,000. The loan was evidenced by a promissory note, which was secured by two mortgages to the Plaintiff's real property.

On July 28, 2017, the Trust's then-counsel sent a payoff letter to the Plaintiffs. The letter quoted a payoff figure of $544,075.30, but mentioned a condition of proof of payments made prior to August 1, 2009.

In July or August 2017, the Trust retained the Defendants to collect on the debt. In their attempt to collect the debt, the Defendants sent a letter to the Plaintiffs on August 27, 2017. Contrary to the original payoff letter, this letter claimed that the Plaintiffs owed the Trust $612,713.09. The letter acknowledged that the Defendants were debt collectors.

On September 7, 2017, the Plaintiffs, through their counsel, supplied to the Defendants an explanation and proof of the previous payments, including copies of checks, tax returns, and other Trust records from 2007 to 2009 showing the monthly payments made by the Plaintiffs. On September 25, 2017, the Plaintiffs wrote to the Defendants explaining their previous payments and asking them to "correct [their] records and provide an updated corrected payoff letter to [the Plaintiffs'] attorney."

On October 6, 2017, the Defendants wrote a letter directly to the Plaintiffs, not their counsel. This letter declared that the Plaintiffs' 2008 and 2009 payments "were never made to the Trust" and rejected the Plaintiffs' explanation regarding their payments. Moreover, it accused the Plaintiffs of conduct that was "highly suspicious and a continued effort to conceal."

On November 21, 2017, the Plaintiffs sold one of the two mortgaged homes and made a substantial payment to the Trust with the proceeds. However, a balance remained due on the loan. On December 5, 2017, the Plaintiff's counsel sent the Defendants a letter explaining the Plaintiffs' calculation as to the remaining balance, which they determined to be $14,564.03. Counsel informed the Defendants that the Plaintiffs would send a check for that amount to the creditor. However, the check was returned "refused" without explanation.

On February 13, 2018, the Defendants again sent a letter directly to the Plaintiffs, not their counsel. In that letter, the Defendants claimed that the Plaintiffs owed $98,129.71, maintaining that the Plaintiffs did not make payments in 2008 and 2009.

Based on these events, the Plaintiffs filed a complaint against the Defendants on May 5, 2018, asserting violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* The Plaintiffs amended their complaint on September 4, 2018. One week later, the Defendants moved to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs need not provide detailed factual allegations, but they must provide enough factual support to raise their right to relief above a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim must be facially plausible, meaning that the pleadings must "allow…the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the…claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

The Defendants move the Court to dismiss the amended complaint because: (1) the Defendants' October 6, 2017 letter does not constitute a "communication" under the FDCPA because it was not made "in connection with the collection of any debt"; and (2) the Plaintiffs have not sufficiently pled facts to warrant piercing the corporate veil. The Court addresses each argument in turn.

4

**I. Whether the October 6, 2017 Letter is a "Communication"**

The FDCPA prohibits debt collectors from engaging in abusive, misleading, or unfair debt-collection practices. 15 U.S.C. § 1692 *et seq*. The statute:

> regulates when and where a debt collector may communicate with a debtor; restricts whom a debt collector may contact regarding a debt; prohibits the use of harassing, oppressive, or abusive measures to collect a debt; and bans the use of false, deceptive, misleading, unfair, or unconscionable means of collecting a debt.

*Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010). However, these restrictions only apply to communications made "in connection with the collection of any debt." 15 U.S.C. §§ 1692c, 1692e, 1692g.

"Neither [the Seventh Circuit] nor any other has established a bright-line rule for determining whether a communication from a debt collector was made in connection with the collection of any debt." *Gburek*, 614 F.3d at 384. The Court does look to several factors to determine whether the communication falls within the ambit of the FDCPA, including the relationship of the parties, the purpose and context of the communication, and whether there was a demand for payment or an effort to induce the debtor to settle his or her debt. *Id.* at 384–86.

The Defendants argue that the October 6, 2017 letter is not a communication made "in connection with the collection of any debt" under the FDCPA because it does not include a demand for payment and is merely a response to a communication initiated by the Plaintiffs. However, this argument fails to appreciate the entire context in which the communication took place. The letter was one installment in the greater dispute

5

over the amount the Plaintiffs owed on their loan. It contained objections to the Plaintiffs' evidence of prior payments and made accusations of the Plaintiffs' "obdurate obstruction." Moreover, the conversation took place between two parties with solely a debtor-debt collector relationship. The Court would be hard pressed to find that, in this context, the correspondence was not made "in connection with the collection of any debt." Therefore, the Court rejects the Defendants' position and holds that the October 6, 2017 letter is a communication under the FDCPA.

## II. Piercing the Corporate Veil

The Defendants next argue that Halsey should be dismissed as a defendant because "he at all times operated as a professional corporation," and the Plaintiffs have not pled sufficient facts to pierce the corporate veil. However, this proposition confuses the issue. The relevant inquiry is not whether the Court should pierce the corporate veil, but whether Halsey was personally involved in the relevant actions so as to be considered a "debt collector" under the FDCPA. *See Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000) (noting that individuals who meet the statutory definition of "debt collector" can be held personally liable under the FDCPA).

The Seventh Circuit has held that "[i]t is a common misunderstanding that the principle of limited liability protects the shareholders and officers of a corporation for liability for their own wrongful acts. It does not. It protects them from *derivative* liability, that is, from being called to account for the wrongs of the

6

corporation." *Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard, P.C.*, 385 F.3d 737, 742 (7th Cir. 2004) (quoting *Spartech Corp. v. Opper*, 890 F.2d 949, 953 (7th Cir.1989)) (emphasis in original). Indeed, "[y]ou don't buy immunity from suits for your torts by being a member of a business corporation or a member of a professional corporation." *Id.* at 743. Rather, if an individual personally committed the FDCPA violation, he may be sued for his actions.

The Defendants contend that the FDCPA does not contemplate this theory of personal liability, pointing to *Pettit* and *White* to bolster their argument. *See Pettit*, 211 F.3d at 1059 ("Because…individuals do not become 'debt collectors' simply by working for or owning stock in debt collection companies, we held that the Act does not contemplate personal liability for shareholders or employees…who act on behalf of those companies, except perhaps in limited instances where the corporate veil is pierced."); *See also White v. Goodman*, 200 F.3d 1016, 1019 (7th Cir. 2000) ("The [FDCPA] is not aimed at the shareholders of debt collectors operating in the corporate form unless some basis is shown for piercing the corporate veil, …or at companies that perform ministerial duties for debt collectors, such as stuffing and printing the debt collector's letters.") (internal citations omitted). However, those cases do not undermine the general principle that an individual working for a debt collection company can be held liable for their personal FDCPA violations. They merely condemn extreme applications of the FDCPA. *See White*, 200 F.3d at 1019 (criticizing the suit of a shareholder and envelope-stuffer with no personal wrongdoing under the

FDCPA); *See also Pettit*, 211 F.3d at 1059 (rejecting the argument that a debt collection company's largest shareholder could be sued absent personal involvement as a "debt collector").

Given that the amended complaint alleges that Halsey is a "debt collector" under the FDCPA, personally drafted the letters that allegedly violated the FDCPA, and personally signed and sent those letters, the Court finds that the Plaintiffs have sufficiently alleged Halsey's individual liability under the FDCPA. Accordingly, the Court denies the Defendants' motion to dismiss Halsey as a defendant.

## CONCLUSION

For the aforementioned reasons, the Court denies the Defendants' motion. It is so ordered.

Dated: 06/12/2019

_____

Charles P. Kocoras
United States District Judge

8